IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**OSHAUNDA MCKINNEY**                                                                **PLAINTIFF**

v.                                                                                   NO. 3:24-cv-489-DPJ-ASH

**THE MISSISSIPPI SCHOOL FOR
MATHEMATICS AND SCIENCE;
DR. DONALD COOK (individual);
AMY ELMORE (individual);
GINGER TEDDER (official)**                                                           **DEFENDANTS**

**(JURY TRIAL DEMANDED)**

## COMPLAINT

McKinney was fired from her job at MSMS over the objections of her supervisor. The termination was forced by executive director Cook based on racially discriminatory stereotypes and complaints. For these reasons, COMES NOW THE PLAINTIFF and alleges as follows:

PARTIES, COVERAGE & IMMUNITY

1. Plaintiff McKinney (race: Black; Age: over 40) is an adult resident of Mississippi.

2. McKinney was an employee of MSMS.

3. McKinney is protected by Title VII, the Equal Protection Clause, 42 USC 1981, 42 USC 1983, and the Age Discrimination in Employment Act.

4. The Mississippi School for Mathematics and Science (MSMS) is a public educational entity operated by the State and a Defendant in this matter.

5. The only counts brought against MSMS are those under Title VII.

6. MSMS is an employer covered by Title VII.

7. Pursuant to *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976), all potential immunity for MSMS - including Eleventh Amendment immunity - has been waived pursuant to Section 5 of the 14th Amendment and Title VII.

8. Defendant Cook (race: White) is the former executive director of MSMS. He is sued in his individual capacity for his actions in instructing staff to fire McKinney.

9. Defendant Elmore (race: White) is an administrative assistant at MSMS. She is sued in her individual capacity for her actions in persuading Cook to instruct staff to fire McKinney.

10. The only counts brought against Cook and Elmore are those under 42 USC 1983, 42 USC 1981, the First Amendment, and the Equal Protection Clause of the Fourteenth Amendment.

11. Pursuant to *Sims v. City of Madisonville*, 894 F. 3d 632 (5th Cir. 2018), Cook and Elmore are the correct people to sue for the termination because McKinney would not have been fired but for Cook's and Elmore's actions.

12. Pursuant to *Whiting v. Jackson State University*, 616 F. 2d 116 (5th Cir. 1980), it is a violation of well-established law for an employee at a state institution to discriminate based on race or retaliation in getting another employee fired.

13. Assuming that Cook and/or Elmore were motivated by race or retaliation, they lack qualified immunity.

14. The current executive director of MSMS is named as a defendant solely in her official capacity. Ginger Tedder is believed to be the current interim executive director.[1]

---

[1] If she has been or is ever subsequently replaced, her successor should be considered automatically substituted as a defendant pursuant to the Federal Rule of Civil Procedure 25(d).

15. The only matters brought against the current executive director are claims for prospective equitable relief under all counts pursuant to *Ex Parte Young* and *Nelson v. University of Texas at Dallas*, 535 F. 3d 318 (5th Cir. 2008).

16. Pursuant to Federal Rule of Civil Procedure 4(j)(2)(B) and Mississippi Rule of Civil Procedure 4(d)(5), service can be made on all Defendants "by delivering a copy of the summons and complaint to the Attorney General of the State of Mississippi."

JURISDICTION, VENUE, EXHAUSTION, AND JURY DEMAND

17. Jurisdiction is proper in this honorable Court under 28 U.S.C. § 1331 because this claim arises under federal law, specifically, Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 1981, as amended.

18. Venue is proper in this honorable Court under 28 U.S.C. § 1391 because the Defendant MSMS is under the supervision of the Superintendent in Jackson, Mississippi, and is an arm of the State which is headquartered in Jackson.

19. Their case concerns termination of McKinney on or around July 18, 2022.

20. McKinney filed charges of discrimination with the Equal Employment Opportunity Commission concerning the allegations in this complaint.

21. This charge was filed on October 27, 2022.

22. This is 101 days after their termination.

23. McKinney filed her charge within 180 days of the events alleged.

24. Defendant had actual notice of the charge within 180 days.

25. McKinney's charge number was 423-2022-01444.

26. McKinney requested notices of right to sue from the EEOC.

27. McKinney filed this Complaint within 90 days of request of the right-to-sue letter.

28. This claim is filed within three years of the termination on July 18, 2022.

29. McKinney has timely and fully exhausted all available administrative remedies and complied with all statutes of limitations.

30. Plaintiff demands a trial by jury on all issues so triable.

## FACTS

31. McKinney worked at MSMS in the Student Success Center building as an Administrative Assistant.

32. She began working there in November 2021.

33. At the time, the Executive Director was Dr. Germain McConnell. He was replaced not long after by Interim Executive Director Rick Smith.

34. McKinney's immediate supervisor was the Director of Academic Affairs, Dr. Danette Clear Moore.

35. McKinney was initially hired in a temporary position to cover for Amy Elmore (race: White), an Administrative Assistant who was scheduled for leave to undergo medical treatment.

36. Prior to leaving, Elmore was tasked by Moore with training McKinney to fulfill the duties of the position.

37. Elmore demonstrated a dislike of Moore from the beginning.

38. Elmore showed McKinney how to make copies and set up files, but otherwise failed to provide her any significant training on her job duties and responsibilities.

39. In one incident, for example, after McKinney told Elmore that McKinney was going to make copies in the copy room, Elmore lied to their supervisor and claimed that she did not know where McKinney was, suggesting she had left without attending to her work.

40. Before her medical leave, Elmore gave McKinney a list of tasks to perform while Elmore was out.

41. McKinney completed the tasks on Elmore's list.

42. However, in April 2022, when Elmore returned to work, she falsely claimed that McKinney had neglected her job and performed poorly.

43. A meeting was held at Starbucks between Elmore, McKinney and Moore where they attempted to clear the air.

44. At this meeting, McKinney pointed out that she felt Elmore's hostility to her may be motivated by race.

45. Elmore (White) responded that she "doesn't care" and indignantly claimed "I've been discriminated against [before]. I'm from Arizona!"

46. Moore concluded that both had been performing well in their jobs, and that this was a "personal" problem Elmore was having with McKinney.

47. Thereafter, Elmore was promoted, and the permanent position as Administrative Assistant came open.

48. Given her good performance, McKinney was hired permanently by Moore and Smith as an Administrative Assistant to help in the Student Success Center effective May 12, 2022.

49. In June, McKinney decided to use some of her time off to take a vacation.

50. For technical reasons that neither Moore nor McKinney could solve, McKinney was not yet able to request her time off on MSMS's employee portal.

51. As such, McKinney verbally requested to take time off for her vacation from her supervisor, Moore.

52. Moore approved McKinney's time off.

53. During McKinney's vacation in June 2022, MSMS hired a new permanent Executive Director, Cook.

54. Elmore worked closely with Cook.

55. Elmore told Cook that McKinney had accused Elmore of race discrimination.

56. Elmore claimed McKinney had "disrespectful body language" and "raised her voice," "yelled her name," and had "resting bitch face."

57. Cook believed Elmore's account, despite never discussing it with McKinney or getting McKinney's side of the story.

58. Cook discussed McKinney with Moore. At first, Cook claimed that he was upset that McKinney had not put in a request for leave through the portal.

59. When Moore tried to explain that she personally approved McKinney's time off because of the technical issue with the portal, it made no difference to Cook.

60. Upon McKinney's return, she noticed that Cook's attitude towards her was noticeably cold from the beginning.

61. He would frequently stand behind her for long periods of time to watch her work or make comments about her job, things he did not do with White employees.

62. McKinney did not receive any discipline or performance deficiency reports.

63. However, unbeknownst to McKinney, Cook and Elmore were secretly plotting to find a pretext to have her fired.

64. They set up surveillance to discover a pretext for her termination.

65. They did not surveil others in the same way they did McKinney.

66. Specifically, at Cook's request, IT retrieved historical records of internet usage.

67. Cook did not ask for Elmore's usage history.

68. Cook did not ask for any White person's usage history.

69. The only usage history he asked to look at was McKinney's.

70. Armed with this pretext, Cook and Elmore together confronted Moore.

71. Cook first claimed that McKinney was "mean to Amy [Elmore] and Amy is one of the nicest people I've ever met in my life."

72. This is false on both points. McKinney was not "mean." Elmore was not "nice," but was deceptive, manipulative and vindictive in the ways already discussed.

73. Elmore indignantly pointed out that McKinney had accused Elmore of race discrimination.

74. Elmore falsely claimed McKinney had "horrible" "body language" and a loud voice, and then imitated McKinney's manner of speaking in a mocking way.

75. Moore calmly told Elmore that "my perception of those interactions was not the same." Moore said that she would like to talk privately with Cook to come up with some solutions and appropriate next steps to resolve it.

76. Instead, Cook proceeded to briefly mention that McKinney was spending time on streaming sites.

77. Moore responded that many people - including herself - stream music or other background noise while they are working. Moore pointed out that McKinney had successfully performed all the work she was given.

78. Cook then changed the subject back to Elmore's (false) claims of McKinney's "behavior."

79. Cook said, "I don't want this wonderful organization <u>lynched</u> with those kinds of feelings."

80. Cook said to Moore: "This is your office that you run. I hold you responsible for this. I want her fired."

81. Cook called McKinney "a cancer."

82. Cook said "you will not give her a reason, just tell her [that] her services are no longer needed."

83. Cook said it was effective immediately and he "already asked the police to be on hand in case there is a bad reaction, which I would not be surprised given what I've heard."

84. In other words, Cook falsely assumed that McKinney was violent and criminal despite having no information (other than racial stereotypes) to suggest this.

85. Cook falsely claimed that Elmore was accurately portraying McKinney's behavior, despite the fact the he knew Elmore was motivated by indignation at McKinney's accusing Elmore of race discrimination, despite the fact Cook never observed any yelling or bad behavior himself, despite the fact Cook never talked to McKinney to get her side of the story, and despite the fact that an eyewitness - Moore - directly contradicted Elmore's claims.

86. Cook and Elmore were motivated by racial and retaliatory motivations.

87. McKinney was replaced in the job by a 35-year-old White person with no history of protected activity.

88. Before the EEOC, MSMS provided a position statement which purported to state the reason for termination.

89. This position statement abandoned the claim that McKinney was mean, yelled, or was otherwise rude. It made no mention of Elmore or any alleged behavioral concerns about McKinney.

90. Instead, it stated the sole reason for termination was McKinney's "improper use of her work computer during business hours."

91. This was a pretext, as other employees were permitted to stream music or other background noise at their desks.

92. But for McKinney's race she would not have been fired.

93. Alternatively or in addition, but for McKinney's complaints of discrimination, she would not have been fired.

94. Alternatively or in addition, but for McKinney's age she would not have been fired.

## CAUSES OF ACTION

COUNT I: 42 U.S.C. §1983: 14th Am. U.S. Const., Equal Protection

95. Plaintiff incorporates all averments set forth in all other sections of the Complaint.

96. This Count is brought against Cook, Elmore and the Executive Director.

97. Section 1983 creates a cause of action against any person acting under color of state law to violate federal civil rights.

98. McKinney has a right to the equal protection of the law.

99. This includes a right to be treated the same as a person of another race, ethnicity, and/or skin color.

100. This was well-established law on the date of McKinney's termination. *Merwine v. Mississippi Board of Trustees*, 754 F. 2d 631, 635 n.3 (5th Cir. 1985); *Whiting v. Jackson State Univ.*, 616 F.2d 116, 121 (5th Cir. 1980).

101. But for McKinney's race, ethnicity and/or color, she would not have been terminated.

102. In this way, Defendants violated the Plaintiff's equal protection rights.

103. Plaintiff was harmed by this violation.

104. This violation was willful and/or with malice.

## COUNT II: 42 U.S.C. §1983: Civil Rights Act of 1866

105. Plaintiff incorporates all averments set forth in all other sections of the Complaint.

106. This Count is brought against Cook, Elmore and the Executive Director.

107. Section 1983 creates a cause of action against any person acting under color of state law to violate federal civil rights.

108. McKinney has a right to equal treatment in contracting under 42 U.S.C. Sec 1981, the Civil Rights Act of 1866.

109. This includes a right to be treated the same as a person of another race, ethnicity and/or skin color.

110. But for McKinney's race, ethnicity, and/or skin color, she would not have been terminated.

111. In this way, Defendants violated the Civil Rights Act of 1866.

112. Plaintiff was harmed by this violation.

113. This violation was willful and/or with malice.

## COUNT III: 42 U.S.C. §1983: First & Fourteenth Amendment, Retaliation

114. Plaintiff incorporates all averments set forth in all other sections of the Complaint.

115. This Count is brought against Cook, Elmore and the Executive Director.

116. Section 1983 creates a cause of action against any person acting under color of state law to violate federal civil rights.

117. McKinney is protected against retaliation for making complaints of race discrimination pursuant to the First & Fourteenth Amendment of the U.S. Constitution.

118. This was well-established law on the date of McKinney's termination. *E.g.*, *Connick v. Myers*, 461 U.S. 138, 148 n.8 (1983).

119. But for McKinney's protected activity, she would not have been terminated.

120. In this way, Defendants violated the rights of the Plaintiff.

121. Plaintiff was harmed by this violation.

122. This violation was willful and/or with malice.

COUNT IV: 42 U.S.C. §1983: Civil Rights Act of 1866, Retaliation

123. Plaintiff incorporates all averments set forth in all other sections of the Complaint.

124. This Count is brought against Cook, Elmore and the Executive Director.

125. Section 1983 creates a cause of action against any person acting under color of state law to violate federal civil rights.

126. McKinney has a right to equal treatment in contracting under 42 U.S.C. Sec 1981, the Civil Rights Act of 1866.

127. This includes a right not to be subject to retaliation for raising claims of race discrimination.

128. But for McKinney's complaints of race discrimination, she would not have been terminated.

129. In this way, Defendants violated the Civil Rights Act of 1866.

130. Plaintiff was harmed by this violation.

131. This violation was willful and/or with malice.

### COUNT V: Title VII: Civil Rights Acts of 1964 and 1991, race

132. Plaintiff incorporates all averments set forth in all other sections of the Complaint.

133. This Count is brought against MSMS.

134. McKinney has a right to equal treatment in employment under Title VII.

135. But for McKinney's race, ethnicity and/or color, she would not have been terminated.

136. In this way, Defendants violated Title VII.

137. Plaintiff was harmed by this violation.

138. This violation was willful and/or with malice.

### COUNT VI: Title VII: Civil Rights Acts of 1964 and 1991, retaliation

139. Plaintiff incorporates all averments set forth in all other sections of the Complaint.

140. This Count is brought against MSMS.

141. McKinney has a right to equal treatment in employment under Title VII.

142. This includes a right not to be subject to retaliation for raising claims of race discrimination.

143. But for McKinney's complaints of race discrimination, she would not have been terminated.

144. In this way, Defendants violated Title VII.

145. Plaintiff was harmed by this violation.

146. This violation was willful and/or with malice.

### COUNT VII: Age Discrimination in Employment Act

147. Plaintiff incorporates all averments set forth in all other sections of the Complaint.

148. This Count is brought against the Executive Director for declaratory relief, prospective relief, nominal damages, attorney fees, and/or any other remedies available under *Ex Parte Young*.

149. McKinney has a right to equal treatment in contracting under the ADEA.

150. But for McKinney's age, she would not have been terminated.

151. In this way, Defendants violated the ADEA.

152. Plaintiff was harmed by this violation.

## REMEDIES

153. Plaintiffs seek all remedies available on all counts, including but not limited to the following:

   a. Back pay;

   b. Reinstatement and/or front pay, as appropriate;

   c. Liquidated damages;

   d. Compensatory damages for emotional distress and any other non-pecuniary harms flowing from Defendants' unlawful actions;

   e. Consequential damages and any other pecuniary harms flowing from Defendants' unlawful actions;

   f. Punitive damages commensurate with the misconduct and necessary to deter future violations of the law;

   g. Nominal damages if no other damages are available;

   h. Pre- and post-judgment interest;

   i. Attorney fees;

   j. Costs;

k.     An injunction curing Defendants' unlawful actions and prohibiting any future similar actions;

l.     Notice given to all employees regarding the violations found by this Court, and notifying such employees of the order entered proscribing any future similar violations;

m.     Any other equitable relief as this honorable Court deems appropriate.

n.     A final judgment declaring that Defendants' treatment of Plaintiffs was unlawful; and/or,

o.     Any other relief available under any applicable principle of law or equity.

This the 19th day of August, 2024.

Respectfully submitted,

OSHAUNDA MCKINNEY

By:     */s/ Joel Dillard*
       Joel F. Dillard (MSB No. 104202)
       Joel F. Dillard, P.A.
       775 North Congress Street
       Jackson, Mississippi 39202
       (601) 509-1372, x2
       joel.f.dillard@gmail.com